**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

FREDERICK CLEVELAND,       )  NO. CV 09-4852-SS
                           )
         Plaintiff,    )
                           )
          v.        )  **MEMORANDUM DECISION AND ORDER**
                           )
MICHAEL J. ASTRUE,       )
Commissioner of the Social   )
Security Administration,    )
                           )
         Defendant.    )

Plaintiff Frederick Cleveland ("Plaintiff") brings this action seeking to overturn the decision of the Commissioner of the Social Security Administration (hereinafter "Defendant," "Commissioner," or the "Agency") denying his application for a period of disability and disability insurance benefits and Supplemental Security Income ("SSI") disability benefits. Alternatively, he asks for a remand. The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. The parties filed a Joint Stipulation ("JS"), pursuant to this Court's Case Management Order, in support of their respective positions. For the reasons stated below, the decision of the Commissioner is AFFIRMED.

**PROCEDURAL HISTORY**

On August 23, 2005, Plaintiff filed this application for a period of disability and disability insurance benefits under Title II of the Social Security Act[1] and an application for SSI benefits under Title XVI of the Social Security Act[2]. (Administrative Record ("AR") 58). Plaintiff alleged a disability onset of July 2, 2004. (Id.). The Agency denied both claims, initially and upon reconsideration. (AR 45, 52). Upon Plaintiff's request, on April 3, 2007, Administrative Law Judge ("ALJ") Ariel L. Sotolongo conducted a hearing at which Plaintiff appeared with counsel and testified. (AR 15). A vocational expert also testified. (Id.).

The ALJ issued a decision denying benefits on July 27, 2007. (AR 15-25). Plaintiff sought review of the ALJ's decision before the Appeals Council, which denied review on June 5, 2009, making the ALJ's decision the final decision of the Commissioner. (AR 4-6). Plaintiff commenced the instant action on August 14, 2009.

//
//
//

---

[1] Title II of the Social Security Act is codified at 42 U.S.C. §§ 401-433 ("Federal Old-Age, Survivors, and Disability Insurance Benefits").

[2] Title XVI of the Social Security Act is codified at 42 U.S.C. §§ 1381-1385 ("Supplemental Security Income for Aged, Blind, and Disabled").

**FACTUAL BACKGROUND**

A.   **Plaintiff's Background**

1.   **Plaintiff's Employment History**

Plaintiff was born on July 29, 1951 and was fifty-five at the time of the hearing.  (AR 331).  He completed one year of college.  (AR 73, 331).  His past work experience includes employment as a caseworker, machine operator, telemarketer and in-home caretaker.  (AR 70, 97, 331-33).  Plaintiff stopped working in 2006 when he quit his job as an in-home caretaker.  (AR 333).  Since 2006, Plaintiff has not looked for any full-time employment.  (AR 351).

2.   **Plaintiff's Medical History**

Plaintiff's medical history includes treatment records from Los Angeles County + USC Medical Center ("LAC/USC")and Downtown Mental Health Center ("DMHC").[3]  (AR 137-146, 150-230, 259-325).  The records

_____

[3]   The Administrative Record also includes medical records from 1999 from Behavioral Health Sciences, Inc.  The medical records, however, consist solely of authorizations to release medical records and a contract signed by Plaintiff promising not to commit suicide.  (AR 120-22).

In addition, the Administrative Record includes a request for medical records directed to Roybal Comprehensive Health Center ("Roybal"), but Roybal found no medical records for Plaintiff.  (AR 117-18).

1  reference treatment for depression, panic attacks, substance abuse,
2  supraventricular tachycardia ("SVT") and chronic obstructive pulmonary
3  disease ("COPD").   (Id.).

5      In 2005 and 2006, Plaintiff sought medical treatment from LAC/USC
6  for a variety of ailments.   (AR 150-230, 259-325).   On several
7  occasions, Plaintiff received treatment at LAC/USC for symptoms
8  resulting from his alcohol abuse.   (See, e.g., AR 150, 173, 290).   On
9  May 25, 2005, Plaintiff, as a result of SVT, experienced chest pain and
10 shortness of breath after drinking.   (AR 182).   On December 16, 2005,
11 Plaintiff was admitted into LAC/USC for nausea, vomiting and SVT.   (AR
12 155).   Plaintiff had been binge drinking for three weeks.   (AR 153,
13 155).   On another occasion, March 7, 2006, Plaintiff went into SVT after
14 drinking and failing to take his medications.   (AR 290).   Plaintiff
15 responded to medication and other than the SVT, his electrocardiograms
16 ("EKGs") were normal.   (See, e.g., 192, 228, 262).

18     The LAC/USC treating physicians routinely noted Plaintiff's abuse
19 of alcohol, advised Plaintiff to stop drinking, and prescribed Ativan.
20 (See, e.g., AR 155, 159, 170, 293).   According to the LAC/USC records,
21 Plaintiff started drinking and doing drugs, including LSD, marijuana,
22 cocaine and methamphetamine, when he was sixteen years old.   (AR 279).
23 Plaintiff was sober from 2000-2004, during which time he completed a
24 twenty-two month stint at an inpatient rehabilitation center in 2000-
25 2001.   (AR 143, 352).   On October 18, 2006, Plaintiff reported that for
26 the past three months, he had been drinking a twelve-pack of beer a day.
27 (AR 278).   Plaintiff stated to the LAC/USC physicians that he stopped
28 abusing drugs.   (Id.).

The LAC/USC physicians also diagnosed Plaintiff with cirrhosis (AR 264), macrocytosis anemia (AR 171, 264), COPD (AR 150, 260), depression (AR 171, 264) and anxiety (AR 170), none of which placed significant limitations on him.  To treat the macrocytosis and cirrhosis, LAC/USC prescribed vitamins.  (See, e.g., AR 171, 264).  The LAC/USC records did not indicate that Plaintiff required significant treatment for his COPD.  (AR 269).  The LAC/USC physicians prescribed Paxil and Celexa to treat Plaintiff's depression.  (AR 171, 271).  Although an LAC/USC physician instructed Plaintiff to follow up with a psychiatrist, the LAC/USC medical records do not contain any evidence that Plaintiff sought treatment for depression or anxiety.  (AR 151, 169).

At the end of 2005, Plaintiff also sought treatment at DMHC, citing depression, panic attacks, low energy and substance dependency.  (AR 137, 141).  At his initial assessment, a DMHC social worker found no significant cognitive limitations, perceptual disturbances, delusions or behavioral disturbances.  (AR 145).  At the time of this initial assessment at DMHC, Plaintiff was taking Paxil, heart medication and Mylan.  (AR 142).  Plaintiff reported that he had been using drugs on and off since the age of fourteen and had last used drugs sixty days prior.  (AR 143).  The DMHC social worker diagnosed Plaintiff with anxiety and polysubstance dependency, for the abuse of alcohol and marijuana, and assigned a global assessment of functioning[4] ("GAF") score of 55.  (AR 146).  On November 15, 2005, a DMHC physician evaluated Plaintiff but deferred diagnosis.  (AR 139).  Plaintiff subsequently

---

[4]   A numeric scale (0-100) used by mental health clinicians and physicians to subjectively rate the social, occupational and psychological functioning of adults.

5

1  requested that DMHC close his case due to his intention to seek
2  psychiatric treatment at LAC/USC instead.  (AR 137).[5]

3

4       **B.   Consultative Examination**

5

6       On December 28, 2005, Dr. Ernest A. Bagner III conducted a
7  consultative psychiatric examination of Plaintiff.  (AR 231-234).
8  Plaintiff reported to Dr. Bagner that he had "anxiety, depression,
9  feelings of helplessness and hopelessness and difficultly with
10 concentration and memory."  (AR 231).  Plaintiff also said that he had
11 "suicidal ideations in the past."  (Id.).  Plaintiff told Dr. Bagner
12 that he did not have panic attacks, paranoia, hallucinations, obsessive-
13 compulsive behavior or other depressive symptoms.  (Id.).  Although
14 Plaintiff claimed to have been admitted to a psychiatric hospital in the
15 past, he was neither seeing a psychiatrist or counselor at the time of
16 the consultative psychiatric examination nor taking any psychiatric
17 medication.  (AR 232).  Plaintiff also reported that he lived alone and
18 was able to perform normal, daily functions including dressing and
19 bathing himself, shopping and managing money.  (Id.).

20

21

22      [5]  The Court notes that the record contains evidence regarding
23 Plaintiff's criminal history. This history apparently includes numerous
   arrests and a conviction for embezzlement. (AR 144). Plaintiff served
24 three years in prison in Michigan and three years in a rehabilitation
   center.  (Id.).  In December 1997, the Oakland County Circuit Court in
25 the State of Michigan issued a bench warrant against Plaintiff for
26 violation of probation. (AR 29, 42). As of the hearing date, the bench
   warrant remained outstanding because Plaintiff had not appeared before
27 the appropriate court to have the bench warrant set aside. (AR 328-29).

28

At the psychiatric evaluation, Plaintiff's speech was intact and coherent and his thought process was "tight." (AR 333). Plaintiff showed average intelligence, was able to do serial threes and serial sevens, and showed no evidence of hallucinations or delusions. (Id.). Dr. Bagner opined that Plaintiff had polysubstance dependency and a history of depressive symptoms. (Id.). Dr. Bagner opined that if Plaintiff avoided alcohol, "he should be significantly better in less than six months." (AR 234). Dr. Bagner assigned a GAF score of 72, concluding that Plaintiff "would have no limitations interacting with supervisors, peers and the public," "zero to mild limitations maintaining concentration and attention and completing simple tasks," "mild limitations completing complex tasks and a normal work week without interruption," and "mild to moderate limitations handling normal stresses at work." (AR 233-34).

On February 9, 2006, Dr. Craig Smith, a State Agency psychiatrist, reviewed the medical records and Dr. Bagner's report. Dr. Smith agreed with Dr. Bagner's findings and concluded that Plaintiff's mental impairment was non-severe. (AR 235, 247). On November 9, 2006, another State Agency physician, Dr. Morgan, reviewed Plaintiff's medical records and affirmed Dr. Smith's opinion. (AR 136).

Regarding Plaintiff's physical impairments, Dr. Myung Sohn, a State Agency physician, conducted an assessment of Plaintiff's residual functional capacity ("RFC") on September 30, 2005 and found that Plaintiff could occasionally lift and/or carry fifty pounds, frequently lift and/or carry twenty-five pounds, stand and/or walk for about six hours in an eight-hour workday with normal breaks, and sit for about six

hours in an eight-hour workday with normal breaks.  (AR 124).  A State Agency physician reviewed the medical evidence and affirmed Dr. Sohn's RFC assessment.  (AR 136).

### C.  **Plaintiff's Testimony**

At the hearing, Plaintiff testified that his panic attacks and depression prevented him from being able to work.  (AR 336, 339). Plaintiff testified that whenever he had a panic attack, he experienced shortness of breath, chest pain, loss of vision and heart palpitations. (AR 336).  His panic attacks started in 1984 and most recently, he had four panic attacks in 2006 resulting in a visit to the LAC/USC emergency room each time.  (AR 336-38).  Stress and the presence of many people triggered Plaintiff's panic attacks.  (AR 348).  Plaintiff testified that his depression caused him to experience a lack of energy, contemplate suicide and have trouble sleeping on occasion.  (AR 340). Plaintiff is currently taking Celexa for his depression.  (AR 341). Plaintiff is not taking any medication for his anxiety, only metopropol for his heart palpitations.  (AR 341, 345).

Plaintiff further testified that he used to abuse alcohol but he had been sober since January 2007.  (AR 345).  Plaintiff testified that prior to his current sobriety, he was sober for a four-year period, from 2000 to 2004.  (AR 352).  Plaintiff stated that he did not drink that often, but that he would drink around the holidays when he felt the most stress.  (AR 345, 352).  Plaintiff believed that he drinks to cope with his depression and anxiety.  (AR 352).

Regarding Plaintiff's limitations, Plaintiff testified that he was forgetful, easily distracted, and easily tired. (AR 346). Plaintiff testified, however, that he could watch television and read a book. (AR 346). Plaintiff also testified that he took daily naps two to three hours in length. (AR 351). When Plaintiff worked, he opted not to interact with his co-workers and had no trouble interacting with his supervisors. (AR 347-48).

In the Function Report Plaintiff submitted with his application, Plaintiff stated that he was able to perform daily activities such as preparing meals (AR 91), cleaning (id.), shopping (AR 92), and handling finances (Id.). Plaintiff read, watched movies, played computer games and completed crossword puzzles. (AR 93). Plaintiff stated that he handled stress "poorly," was afraid of authority figures and did not trust people. (AR 95).

### D.  **Lay Witness Statement**

Robert Munillo, Plaintiff's case manager, submitted a Third Party Function Report to supplement Plaintiff's application for a period of disability and disability insurance benefits and SSI benefits. (AR 105-112). Mr. Munillo stated that he has known Plaintiff since October 2003 and met with Plaintiff two to three hours a month on average. (AR 105). Mr. Munillo stated that Plaintiff had a history of anxiety and depression and that Plaintiff's depression has "re-surfaced." (AR 106, 112).

9

Mr. Munillo stated that Plaintiff "has no physical limitations." (AR 112).  Plaintiff is able to perform personal hygiene tasks (AR 106), take medication (AR 107), prepare his own meals (Id.), perform housework (Id.), go out alone (AR 108), shop (Id.) and handle his finances (Id.).  Mr. Munillo, however, stated that Plaintiff lacks motivation and needs reminders to clean and socialize.  (AR 107, 112).  Mr. Munillo further stated that Plaintiff's depression significantly affected his ability to recall events and concentration.  (AR 110, 112).  Plaintiff could only pay attention for three minutes at a time.  (AR 110).  Mr. Munillo stated that Plaintiff can follow spoken instructions.  (Id.).

### E.   Vocational Expert's Testimony

Heidi Paul testified at the hearing as a vocational expert.  Ms. Paul testified that Plaintiff's past relevant work included work as a telemarketer, case aide and drill press operator.  (AR 352-53).  Ms. Paul stated that the telemarketing position required a sedentary exertion level and the specific vocational preparation ("SVP") was three.  (AR 352).  Ms. Paul stated that the case aide position required a light exertion level and the SVP was three.  (AR 353).  The drill press operator position required a medium exertion level and its SVP was three.  (AR 353-54).

The ALJ presented five hypotheticals to Ms. Paul.  The hypotheticals were persons with the following limitations: (1) medium level of exertion (AR 354); (2) medium level of exertion and low-stress (Id.); (3) light level of exertion (AR 356); (4) light level of exertion and low-stress (Id.), and (5) light level of exertion, low-stress and

the need to take several hour-long naps each day (AR 357). Following the ALJ's first hypothetical, Ms. Paul testified that such an individual could perform Plaintiff's past relevant work. (AR 354). Following the ALJ's second hypothetical, Ms. Paul testified that such an individual could perform the past relevant work of case aide. (Id.). In addition, such an individual could perform other jobs, including work as a change person and mail carrier. (AR 355). Ms. Paul stated that there were four thousand three hundred change person jobs and three thousand four hundred mail carrier jobs locally. (AR 355-56). Following the ALJ's third hypothetical, Ms. Paul testified that such an individual could perform the work of a telemarketer and case aide. (AR 356). Following the ALJ's fourth hypothetical, Ms. Paul testified that such an individual could perform the work of a case aide, fundraiser II, and newspaper carrier. (AR 356-57). Ms. Paul stated that there were five thousand three hundred fundraiser II jobs and two thousand eight hundred newspaper carrier positions locally. (AR 357). Finally, following the last hypothetical, Ms. Paul testified that such limitations would eliminate all jobs. (Id.).

## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity[6] and that is expected to result in death or to last for a continuous period of at least twelve

---

[6] Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910.

months.  Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.  20 C.F.R. §§ 404.1520, 416.920.  The steps are:

(1)   Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

(2)   Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

(3)   Does the claimant's impairment meet or equal one of a list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4)   Is the claimant capable of performing his past work?  If so, the claimant is found not disabled.  If not, proceed to step five.

12

1      (5)   Is the claimant able to do any other work?  If not, the
2                claimant is found disabled.  If so, the claimant is found not
3                disabled.

4

5  Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d
6  949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098-99); 20
7  C.F.R. §§ 404.1520(b)- 404.1520(g)(1) & 416.920(b) - 416.920(g)(1).

8

9      The claimant has the burden of proof at steps one through four, and
10 the Commissioner has the burden of proof at step five.  Bustamante, 262
11 F.3d at 953-54 (citing Tackett,180 F.3d at 1098).  Additionally, the ALJ
12 has an affirmative duty to assist the claimant in developing the record
13 at every step of the inquiry.  Id. at 954.  If, at step four, the
14 claimant meets his burden of establishing an inability to perform past
15 work, the Commissioner must show that the claimant can perform some
16 other work that exists in "significant numbers" in the national economy,
17 taking into account the claimant's residual functional capacity,[7] age,
18 education, and work experience.  Tackett, 180 F.3d at 1099-1100;
19 Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).
20 The Commissioner may do so by the testimony of a vocational expert or by
21 reference to the Medical-Vocational Guidelines appearing in 20 C.F.R.
22 Part 404, Subpart P, Appendix 2 (commonly known as "the Grids").
23 Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Tackett,
24 180 F.3d at 1100-01).  When a claimant has both exertional (strength-
25 related) and nonexertional limitations, the Grids are inapplicable and

26 _____

27       [7]   Residual functional capacity is what one "can still do despite
[his] limitations" and represents an assessment "based on all the
28 relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

1  the ALJ must take the testimony of a vocational expert.  <u>Moore v. Apfel</u>,

2  216 F.3d 864, 869 (9th Cir. 2000) (citing <u>Burkhart v. Bowen</u>, 856 F.2d

3  1335, 1340 (9th Cir. 1988)).

4

5                              **THE ALJ'S DECISION**

6

7      The ALJ found that Plaintiff was not disabled within the meaning of

8  the Social Security Act.  (AR 24-25).  At the first step of the

9  evaluation process, the ALJ observed that although Plaintiff worked in

10  2006, Plaintiff had not engaged in substantial gainful activity since

11  2005, when he stopped working as a home health care attendant.  (AR 17).

12  At steps two and three, the ALJ found that Plaintiff's alcohol abuse and

13  COPD were severe impairments, but that Plaintiff's macrocytic anemia,

14  alcoholic cirrhosis, SVT, chest pain and mental impairment were not

15  severe.  (AR 18).  Neither of the severe impairments met or equaled the

16  Listing.  (AR 19).

17

18      Next, the ALJ weighed the testimonies and evidence in the medical

19  records to determine Plaintiff's residual functional capacity ("RFC").

20  The ALJ subsequently concluded that Plaintiff retained the capacity to

21  "lift/carry [fifty] pounds occasionally, [twenty-five] pounds

22  frequently, and stand, walk or sit for [six] out of [eight] hours a day,

23  was [sic] frequent balancing, climbing, kneeling, stooping, crouching

24  and crawling, and no concentrated exposure to fumes, gases, dust or

25  other respiratory irritants."  (<u>Id.</u>).  The ALJ found Plaintiff's

26  statements "concerning the intensity, persistence and limiting effects

27  of [his] symptoms [] not entirely credible" and noted that the

28  conclusions of the consultative psychiatrist and State Agency physicians

supported this RFC assessment and a finding of not disabled.  (AR 21, 24).

At step four of the evaluation process, the ALJ considered Plaintiff's RFC as well as the testimony of the vocational expert and found that Plaintiff could return to his past relevant work as a telemarketer and drill press operator.  (AR 24).  Consequently, the ALJ found that Plaintiff was not disabled within the meaning of the Act. (AR 24-25).

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance."  Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)).  It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. (citing Jamerson, 112 F.3d at 1066; Smolen, 80 F.3d at 1279).  To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's]

15

1  conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2
2  F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support
3  either affirming or reversing that conclusion, the court may not
4  substitute its judgment for that of the Commissioner. Reddick, 157 F.3d
5  at 720-21 (citing Flaten v. Sec'y, 44 F.3d 1453, 1457 (9th Cir. 1995)).

7                                **DISCUSSION**

9      Plaintiff contends that:  (1) the ALJ erred by failing to provide
10 germane reasons for rejecting lay witness testimony; (2) the ALJ erred
11 by failing to properly consider the treating clinician's opinion; (3)
12 the ALJ erred by failing to provide clear and convincing reasons for
13 rejecting Plaintiff's testimony; and (4) the ALJ erred in finding
14 Plaintiff's mental impairment non-severe.  (JS at 2).  The Court
15 disagrees with Plaintiff's contentions.

17      **A.   The ALJ's Failure To Expressly Consider The Lay Witness**
18           **Testimony Was Harmless Error And Does Not Require Remand**

20     Plaintiff contends that the ALJ improperly rejected lay witness
21 testimony without providing germane reasons.  (JS at 4).  Robert Munillo
22 submitted a Third Party Function Report in support of Plaintiff's
23 application.  (AR 105-112).  Mr. Munillo stated that Plaintiff had a
24 history of anxiety, depression and suicidal ideation.  (AR 106, 112).
25 Due to a resurfacing of Plaintiff's depression, Plaintiff had a lack of
26 motivation and his willingness to clean, cook and socialize with others
27 has "dramatically decreased."  (AR 112).  Mr. Munillo also stated that
28 Plaintiff had "no physical limitations" and was capable of performing

                                     16

everyday tasks such as managing finances and shopping.  (AR 106-108, 112).

In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work.  Stout v. Comm'r, 454 F.3d 1050, 1053 (9th Cir. 2006); Smolen, 80 F.3d at 1288; 20 C. F. R. §§ 404.1513(d)(4) & (e), and 416.913(d)(4) & (e).  The ALJ may discount the testimony of lay witnesses only if she gives "reasons that are germane to each witness."  Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993).  See also Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001) ("Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." (citations omitted)).

An ALJ's decision, however, will not be reversed for failure to give specific reasons for rejecting lay testimony if the error was harmless.  See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("A decision of the ALJ will not be reversed for errors that are harmless.").  In Stout, the Ninth Circuit held that when an ALJ fails to expressly discuss lay testimony, the error is harmless if "no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination."  454 F.3d at 1056.  The Ninth Circuit subsequently clarified that when the ALJ fails to expressly consider lay witness testimony and there is substantial evidence supporting the ALJ's conclusions, the relevant inquiry for the court is whether the ALJ's decision remains "legally valid" despite such error.  Carmickle v. Comm'r, 533 F.3d 1155, 1162 (9th Cir. 2008).  See also Baston v. Comm'r,

17

359 F.3d 1190, 1197 (9th Cir. 2004) (finding ALJ's error harmless because it did not negate the validity of the ALJ's conclusion).  Thus, where an ALJ's reasoning and ultimate credibility determination are adequately supported by substantial evidence in the record, any failure to consider lay witness testimony is harmless error.  <u>Carmickle</u>, 544 F.3d at 1155.

Here, the ALJ erred by rejecting Mr. Munillo's statements without expressly providing germane reasons for the rejection.   The ALJ's failure to consider Mr. Munillo's statements, however, was harmless error.

Mr. Munillo's statements essentially mirrored Plaintiff's testimony.  Mr. Munillo acknowledged that he spent only two to three hours a month with Plaintiff.  (AR 105).  A few hours a month does not constitute sufficient contact with Plaintiff that would render Mr. Munillo competent to testify as to Plaintiff's daily activities and symptoms.  <u>See</u> <u>Crane v. Shalala</u>, 76 F.3d 251, 254 (9th Cir. 1996) (finding that the ALJ did not err in rejecting testimony because the witness did not have sufficient contact with claimant to qualify as a competent lay witness).   Rather, Mr. Munillo's statements concerning Plaintiff's symptoms were based on Plaintiff's statements to him and not on Mr. Munillo's personal and direct observation of Plaintiff's daily activities.

As discussed <u>infra</u>, the ALJ properly found Plaintiff's testimony not entirely credible.  In assessing Plaintiff's credibility, the ALJ specifically considered the medical evidence, the inconsistencies

between Plaintiff's testimony and actions, and Plaintiff's daily activities. After weighing the medical evidence and testimonies, the ALJ concluded that Plaintiff was "not entirely credible. (AR 21). Thus, the ALJ's reasoning and ultimate credibility determination are adequately supported by substantial evidence in the record. The ALJ would not have credited Mr. Munillo's statements, which were clearly based on Plaintiff's statements to him.

The ALJ's error is also harmless under the narrower standard set forth in <u>Stout</u>. Even if the ALJ were to fully credit Mr. Munillo's statements, no reasonable ALJ would have reached a different decision based upon this evidence. <u>See Stout</u>, 454 F.3d at 1056. Remand would therefore be futile. Accordingly, the ALJ's failure to consider Mr. Munillo's statements is harmless error.

**B.   <u>The ALJ Properly Discounted The Social Worker's Opinion</u>**

Plaintiff contends that the ALJ erred by failing to consider the treating clinician's opinion regarding Plaintiff's anxiety and assessed GAF score. (JS 6-8). Plaintiff is incorrect. The ALJ properly discounted the social worker's opinion.

In determining whether a claimant has a medically determinable impairment, the ALJ will consider the medical evidence in conjunction with the other evidence in the record. 20. C.F.R. § 404.1527(b). <u>Compare</u> 20 C.F.R. § 404.1513(a) and (d) (distinguishing between opinions from acceptable medical sources and other sources). Medical opinions are important at every step of the evaluation sequence and are given

greater weight than opinions from other sources.  See Gomez v. Chater, 74 F.3d 967, 970-71 (9th Cir. 1996) (explaining that the federal regulations permit the Commissioner to accord greater weight to the opinions from acceptable medical sources).  An ALJ may consider evidence from other sources "to show the severity" of the impairments and how they affect the ability to work, but not to determine whether the claimant has a medically determinable impairment.  20 C.F.R. § 404.1513(d).  An ALJ may give less or no weight to the opinions from other sources.  See Gomez, 74 F.3d at 970-71.  When an ALJ rejects the testimony of lay witnesses, however, he must gives "reasons that are germane to each witness."  Dodrill, 12 F.3d at 919.

When Plaintiff first sought treatment at the DMHC, a social worker conducted an initial assessment, the Adult Initial Intake Assessment. (AR 141-146).  The social worker took Plaintiff's history, assessed him with a GAF of 55 and set up an appointment with a physician for an evaluation.  (AR 146).  The ALJ properly considered the social worker's opinion and provided several germane reasons for according the social worker's opinion less weight.

First, the social worker was not an acceptable medical source and thus his opinion is not afforded the weight given to medical opinions. (AR 22, n.3).  See 20 C.F.R. § 404.1513(a).  Rather, the social worker was a non-medical source.  20 C.F.R. § 404.1513(d)(4).  Thus, the ALJ was entitled to give his testimony less weight than those from acceptable medical sources when assessing the severity of Plaintiff's mental impairments.  Gomez, 74 F.3d at 970-71.

1    Second, the ALJ properly discounted the social worker's opinion

2 because it was not supported by a longitudinal objective record. (AR

3 22, n.3).   The social worker's opinion was based on only <u>one</u> meeting.

4 Shortly after meeting with the social worker, Plaintiff requested that

5 DMHC close his case.  (AR 137).   In contrast, Plaintiff's lengthy

6 medical records from LAC/USC, which the ALJ thoroughly reviewed and

7 discussed, enabled the ALJ to conclude that Plaintiff's anxiety disorder

8 arose whenever Plaintiff abused alcohol.  (AR 18, 23).   The ALJ

9 specifically cited the medical records and specific instances which

10 showed that Plaintiff's anxiety and alcohol abuse were linked; the

11 anxiety diagnosis was "always in the context of his alcohol abuse." (AR

12 21-23).   Moreover, the ALJ specifically noted that the social worker's

13 opinion contained internal inconsistencies.  Although the social worker

14 diagnosed Plaintiff with a GAF of 55, he found that Plaintiff had no

15 significant cognitive limitations, perceptual disturbances, delusions or

16 behavioral disturbances.  (AR 145).

17

18    Further, the social worker's opinion conflicted with those from the

19 consultative psychiatrist and State Agency physicians.   An ALJ may

20 reject testimony when it conflicts with the medical evidence.   <u>See</u>

21 <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1218 (9th Cir. 1993) (stating that

22 inconsistency with medical evidence was a germane reason for rejecting

23 certain testimony).  Dr. Bagner, the examining psychiatrist, concluded

24 that if Plaintiff avoided alcohol, he would have zero to moderate

25 limitations working.  (AR 234).  Dr. Bagner assigned a GAF of 72.  (AR

26 233).  Two State Agency physicians, Drs. Smith and Morgan, reviewed all

27 of Plaintiff's medical records, including the social worker's initial

28 assessment, and reached the conclusion that Plaintiff's mental

1 impairment was not severe.     (AR 235, 247, 250)   Based upon this
2 evidence, the ALJ properly discounted the social worker's opinion.

3

4    **C.    The ALJ Gave Clear And Convincing Reasons For Rejecting**
5         **Plaintiff's Testimony**

6

7    Plaintiff contends that the ALJ rejected Plaintiff's testimony
8 without providing clear and convincing reasons. (JS at 13).   The Court
9 disagrees.

10

11    To determine whether a claimant's testimony regarding subjective
12 pain or symptoms is credible, an ALJ must engage in a two-step analysis.
13 First, the ALJ must determine whether the claimant has presented
14 objective medical evidence of an underlying impairment "which could
15 reasonably be expected to produce the pain or other symptoms alleged."
16 Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (citing
17 Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)
18 (internal quotation marks omitted).   "The claimant, however, 'need not
19 show that her impairment could reasonably be expected to cause the
20 severity of the symptom she has alleged; she need only show that it
21 could reasonably have caused some degree of the symptom.'"   Id. (quoting
22 Smolen, 80 F.3d at 1282).   Second, if the claimant meets this first
23 test, and there is no evidence of malingering, "the ALJ can reject the
24 claimant's testimony about the severity of her symptoms only by offering
25 specific, clear and convincing reasons for doing so."   Smolen, 80 F.3d
26 at 1281.

27

28

1    The ALJ may consider the following factors when weighing the
2 claimant's credibility: (1) his reputation for truthfulness; (2)
3 inconsistencies either in his testimony or between his testimony and his
4 conduct; (3) his daily activities; (4) his work record; and (5)
5 testimony from physicians and third parties concerning the nature,
6 severity, and effect of the symptoms of which he complains.  Thomas v.
7 Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).

8

9    The ALJ did not err in finding the Plaintiff not credible.  In the
10 first step of the credibility analysis, the ALJ properly considered the
11 medical evidence to determine that "the impairments could reasonably be
12 expected to produce the alleged symptoms." (AR 21).  At the second
13 step, the ALJ provided clear and convincing reasons for rejecting
14 Plaintiff's testimony "concerning the intensity, persistence and
15 limiting effects of these symptoms [as] not entirely credible. (Id.).

16

17    The ALJ examined and discussed in detail the medical records from
18 LAC/USC, the consultative psychiatric evaluation report, and State
19 Agency physicians' opinions.  (AR 21-24).  Regarding Plaintiff's
20 physical impairments, the ALJ found that most of the symptoms were
21 "secondary to the alcohol abuse" and that the symptoms imposed no
22 significant limitations.  (AR 23).  The ALJ cited specific instances
23 when the symptoms were merely secondary to the alcohol abuse.  On May
24 25, 2005, Plaintiff was in SVT and experienced chest pain and shortness
25 of breath after drinking.  (AR 182).  On December 16, 2005, Plaintiff
26 was admitted to the hospital because he was in SVT and experienced
27 nausea and vomiting after binge drinking for three weeks.  (AR 155).  On
28 March 7, 2006, Plaintiff went into SVT after drinking and not taking his

1  medication.   (AR 290).   During each of these admissions, Plaintiff's
2  symptoms were successfully treated with medication.   (AR 22).   The
3  treating physicians consistently advised Plaintiff to stop drinking.
4  (See, e.g., AR 169, 173).

5

6      As for Plaintiff's mental impairments, the ALJ also concluded that
7  Plaintiff's anxiety was "always in the context of his alcohol abuse."
8  (AR 23).   The ALJ properly considered the opinions of physicians and
9  third parties in weighing Plaintiff's credibility.   See Thomas, 278 F.3d
10  at 958-59.   See also Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir.
11  2001) (stating that while the ALJ cannot reject subjective testimony
12  solely because it is not fully corroborated by medical evidence, the
13  medical evidence is a relevant factor in determining the severity of the
14  impairment and its disabling effects).   The ALJ gave "much weight" to
15  the psychiatric consultative examiner, who diagnosed Plaintiff with
16  polysubstance dependency.   (AR 22-23).   Dr. Bagner opined that if
17  Plaintiff avoided alcohol, he would significantly improve in six months
18  and have zero to mild limitations in all psychiatric work-related areas
19  and mild to moderate limitations handling normal work stress.   (Id.)
20  The ALJ also considered the opinions of State Agency physicians who
21  similarly concluded that Plaintiff was not disabled.   (AR 24).

22

23      In addition to weighing the medical evidence, the ALJ also pointed
24  to Plaintiff's own inconsistencies in testimony and action.   Although
25  Plaintiff claims to be disabled as a result of anxiety and depression,
26  Plaintiff had not sought treatment for the alleged mental impairments.
27  Plaintiff visited DMHC and had an initial evaluation but subsequently
28  requested that the DMHC close his case.   (AR 137).   Plaintiff reported

that he intended to seek psychiatric treatment at LAC/USC, but there is no evidence in the medical records that Plaintiff ever sought or received psychiatric treatment at LAC/USC. (Id.). The ALJ concluded that Plaintiff's failure to follow up with the Department of Mental Health and request that his case be "closed" suggested that his symptoms were not as significant as Plaintiff alleged. (AR 23). See Burch, 400 F.3d at 681 (finding that plaintiff's failure to seek treatment for her back pain was powerful evidence of the degree of pain plaintiff actually experienced).

Finally, the ALJ considered Plaintiff's daily and work activities in his credibility assessment. (AR 24). The ALJ noted that Plaintiff was able to take care of his personal needs, use the computer, read, go to the store, do laundry, watch television and movies, clean his room and dishes, prepare his meals, use public transportation, shop, handle his finances, play computer word games, do crossword puzzles and call his relatives regularly. (AR 24, 89-94). In addition, although not substantial gainful activity, Plaintiff was able to work after his alleged onset date. (AR 24, 333). The ALJ properly found that the degree of daily activities in combination with Plaintiff's work after his alleged onset date are cast doubt on Plaintiff's assertion that he is totally disabled. (AR 24). Accordingly, no remand is required.

25

**D.   The ALJ Properly Found Plaintiff's Mental Impairment Non-Severe**

Plaintiff contends that the ALJ erred when he found Plaintiff's mental impairment to be not severe.  Plaintiff argues that the ALJ erred when he discounted the DMHC social worker's assessment.   (JS at 20).  The Court disagrees.

A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).  Although, by its own terms, this is a de minimis step, an impairment can be found not severe "if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individuals ability to work.'" Smolen, 80 F.3d at 1290 (quoting Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988)(adopting SSR 85-28)). Substantial evidence supports the ALJ's finding that Plaintiff's mental impairment is not severe.

The proper inquiry is whether Plaintiff's anxiety significantly limited his ability to do basic work functions.  The evidence the ALJ relied upon in making his credibility assessment applies equally here.  First, the ALJ properly considered the opinions of the consultative psychiatrist and State Agency physicians, all of whom concluded that Plaintiff's mental impairment was not severe.  (AR 22-24).  Dr. Bagner concluded that if Plaintiff avoided alcohol, in less than six months, he would have zero to mild limitations in all psychiatric work-related areas and mild to moderate limitations handling normal work stresses. (AR 22, 234).  Two State Agency physicians who reviewed Plaintiff's medical records found that Plaintiff's mental impairment was not severe.

26

Second, Plaintiff's failure to seek psychiatric treatment indicates a lack of significant impairment. <u>See</u> <u>Burch</u>, 400 F.3d at 681 (finding that plaintiff's failure to seek treatment for her back pain was powerful evidence that the degree of pain she actually experienced was not as alleged). Plaintiff had undergone an initial evaluation at DMHC, but requested that DMHC close his case shortly thereafter. (AR 22, 137). Contrary to Plaintiff's stated reasons for having DMHC close his file – that he was planning to obtain psychiatric treatment at LAC/USC – Plaintiff did not seek psychiatric treatment elsewhere. (AR 22). Finally, by Plaintiff's own admission, he is able to perform daily activities, including, <u>inter</u> <u>alia</u>, cooking, cleaning, shopping and handling his own finances. (AR 89-96). The ability to perform these daily tasks is inconsistent with his claims of a severe mental impairment.

Further, as discussed <u>supra</u>, the ALJ properly rejected the social worker's report and GAF score. The social worker is not an acceptable medical source and his diagnosis and GAF score are based solely on what Plaintiff reported to him. Moreover, the social worker's report was internally inconsistent as he found that Plaintiff had no significant cognitive limitations, perceptual disturbances, delusions or behavioral disturbances. (AR 145).

Finally, even if the ALJ had concluded that Plaintiff suffered from a severe mental impairment, this finding would not have altered the decision. The medical evidence consistently demonstrated that any mental impairments suffered by Plaintiff were greatly exacerbated by his alcohol abuse. Even if the ALJ had gone through the entire analysis

following a severe mental impairment finding, he would have ultimately found the Plaintiff not disabled when sober, based on the medical and other evidence presented.  Accordingly, any error was harmless error and no remand is required.  See e.g., Baston, 359 F.3d at 1197.

## CONCLUSION

Consistent with the foregoing, IT IS ORDERED that the decision of the Commissioner is AFFIRMED.  IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on counsel for both parties.

DATED: April 23, 2010.                    _____/S/_____
                                          SUZANNE H. SEGAL
                                          UNITED STATES MAGISTRATE JUDGE